# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

TRAEGER PELLET GRILLS LLC, a
Delaware limited liability company,

                       Plaintiff,

     v.

JOSEPH TRAEGER, an individual, BRIAN
TRAEGER, an individual, and MARK
TRAEGER, an individual,

                       Defendants.

Civil Action No. _____

## VERIFIED COMPLAINT FOR
## INJUNCTIVE RELIEF AND DAMAGES
## (JURY TRIAL DEMANDED)

Plaintiff TRAEGER PELLET GRILLS LLC ("Traeger Grills" or

"Plaintiff") hereby sues Defendants, JOSEPH TRAEGER ("Joe"), BRIAN

TRAEGER ("Brian") and MARK TRAEGER ("Mark") (collectively

"Defendants" or the "Traeger Defendants"), and alleges:

## I.     INTRODUCTION AND SUMMARY

1.     This case has become necessary because Joe and Brian Traeger are

trying to sell their brand and likeness twice, to the detriment of the company they

founded and the employees that work there.  Joe Traeger is credited with inventing

the wood pellet barbeque grill in the 1980s, and he and his family sold the

company he founded in 2006.  In the sale, Plaintiff, Traeger Grills, paid over $9

million for the exclusive and perpetual right to use Defendants' names, likenesses

and reputations in the wood pellet grill industry.  Since the sale, Plaintiff has spent

over $100 million building the "Traeger" brand, maintaining the Company's

position as an industry leader and cultivating an enthusiastic and extremely loyal customer base.

2.     In 2018, however, in breach of their contractual commitments, Defendants Joe and Brian Traeger began colluding with a competitor and using the very names, likenesses, and personal goodwill they sold to Plaintiff in order to enrich themselves further, confuse consumers, and damage the company they founded.  Beginning in late 2018, a competitor, Dansons US, LLC ("Dansons"), announced that it had hired Joe and Brian Traeger "to elevate the Louisiana Grills brand and product portfolio."  Soon thereafter, in early 2019, Dansons announced it would introduce a "FOUNDERS SERIES" of grills "brought to you proudly by Joe Traeger, the founder of the original pellet grill."

3.     To be clear, Joe and Brian Traeger are free to work for Dansons or anyone else.  They are not free, however, to do what they agreed not to do – and what they were paid millions of dollars not to do – which is to use their names, likenesses, and reputations to market competing wood pellet grills.  As detailed below, with the knowing participation of Joe and Brian, Dansons continues to use their likenesses on a near-daily basis to suggest falsely that lower-priced and lower-quality Danson grills are affiliated with or endorsed by Traeger Grills.  As a result, in order to protect its rights and prevent further confusion in the market, Traeger Grills has been forced to bring this action to compensate it for the damages caused by this misappropriation of its property and to prevent such misconduct in the future.

4.     Traeger Grills has long been the largest manufacturer of premium wood pellet grills in the world.  Traeger Grills is the successor-in-interest to the business of Traeger Industries, Inc. ("TII"), a company once owned by Defendants and other Traeger family members.

5.     Dansons is a more recent entrant in the wood pellet grills market.  It sells lower-priced and lower-quality wood pellet grills under the brand names PIT BOSS and LOUISIANA GRILLS.

6.     In 2006, the Traeger family sold to Plaintiff all of the assets of TII, including all associated intellectual property.  The intellectual property assets broadly included all properties used or usable in the business, including the Traeger name, all patents and trademarks, all other marks, logos, copyrights or other intellectual property used or usable in connection with the business (including without limitation likenesses of people and images used in advertising). It also included the "personal goodwill" of the individual Traeger Sellers (Joe, Brian, Randy, and Mark Traeger), meaning the value associated with and derived from their personal reputation in the grilling industry.

7.     These broad intellectual property rights were critical to Traeger Grills' purchase of the TTI assets, and the Traeger Sellers were paid handsomely for them: the parties allocated $9,000,000.00 of the sale price, more than 70% of the total price paid, to the intellectual property assets.  "Traeger" has become synonymous with high-quality wood pellet grills and grilling, and without the exclusive right to these assets, including the Traeger name and reputation, Plaintiff faced the unacceptable risk that Traeger family members would dilute the Traeger

brand they had sold by using or allowing others to use it in the future. That risk has now become a reality.

8.      In 2018, Joe Traeger reached out to Traeger Grills for a job for himself and Brian. The terms were unreasonable and unacceptable to Traeger Grills. Rather than pursue a commercially reasonable arrangement, or seek employment in a legally permissible form (i.e., any job that did not trade on their names, likeness or reputations), Joe and Brian decided to violate their contractual commitments. Shortly thereafter, in late 2018, Dansons announced that it had hired Joe and Brian "to elevate the Louisiana Grills brand and product portfolio." Dansons failed to disclose that it intended to elevate LOUISIANA GRILLS on the back of the TRAEGER brand by misappropriating the Traeger name and the other intellectual property Joe and Brian sold to Traeger Grills.

9.      Dansons' true intentions became clear in March 2019 with the announcement that it would be introducing in the Fall of 2019 a new series of grills called the FOUNDERS SERIES that would be "brought to you proudly by Joe Traeger, the founder of the original pellet grill, and Dan Thiessen, an accomplished innovator in the pellet grill industry." Dansons continues on a near-daily basis to use the likenesses of Joe and Brian, their reputations and stories in the wood pellet grilling industry, and even the iconic TRAEGER Barn that Traeger Grills has used to market its grills for nearly two decades, all in order to suggest falsely that Dansons is affiliated with or endorsed by Traeger.

10.     Dansons could not have undertaken this campaign without Joe's and Brian's active consent and participation. Traeger Grills brings this action to enjoin

4832-5089-6025

Joe and Brian from their continuing illegal conduct and to recover the resulting damages Traeger Grills has suffered as a result of their theft of the TRAEGER brand and Traeger Grills' related intellectual property.

## II.    JURISDICTION, PARTIES, AND VENUE

11.    This is an action for injunctive relief and for damages for breach of contract, contractual indemnification, breach of the covenant of good faith and fair dealing, violation of the right of publicity under Fla. Stat. § 540.08, contributory trademark infringement under 35 U.S.C. § 1114(1), contributory false designation of origin under 35 U.S.C. § 1125(a), and willful violation of Florida Stats. § 501 and 204.

12.    The Court has jurisdiction over this action and of the parties under 28 U.S.C. § 1331 based on federal questions, *i.e.*, contributory trademark infringement under 35 U.S.C. § 1114(1) and contributory false designation of origin under 35 U.S.C. § 1125(a). The Court has supplemental jurisdiction over all other claims under 28 U.S.C. § 1367(a).

13.    Plaintiff, Traeger Grills, is a limited liability corporation having its place of incorporation in Delaware and having its principal place of business at 1215 E. Wilmington Ave. Suite 200, Salt Lake City, Utah 84106.

14.    Upon information and belief, Defendants, Joseph Traeger ("Joe"), Brian Traeger ("Brian"), and Mark Traeger ("Mark") are citizens of the State of Oregon.  Upon information and belief, Randy Traeger is deceased.

15.    This Action involves an Intellectual Property Right Assignment Agreement ("IP Assignment Agreement") (Exhibit 1) and an Asset Purchase

Agreement (Exhibit 6) between Joe, Brian, Randy, and Mark, on the one hand, and Traeger Grills, on the other.  At the time that the IP Assignment Agreement and the Asset Purchase Agreement were entered, Traeger Grills was incorporated in the State of Florida and had its principal place of business in this District.

16.     Personal jurisdiction over Defendants is proper in this Court because they agreed in the IP Assignment Agreement and the Asset Purchase Agreement that each "shall be governed by and construed in accordance with the laws of the State of Florida" and that any dispute arising out of it would be adjudicated in Hillsborough County, Florida. (Exhibit 1 at Article 9.8; Exhibit 6 at Article 9.8).

17.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Hillsborough County, Florida, within this District, namely, the IP Assignment Agreement and the Asset Purchase Agreement was entered into in Hillsborough County, Florida.

## III.    FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.    Joe Traeger Invents the Wood Pellet Grill

18.     Traeger Grills' inception, history and defining story is rooted in Joe Traeger's invention of the wood pellet grill.  As that story goes, in the 1980s Joe invited his family to a Fourth of July cookout at his home in Mount Angel, Oregon.  When a grease fire erupted in his gas grill, burning the chicken and threatening his family's safety, Joe kicked the grill off of his porch and headed to the iconic TRAEGER Barn.  The result was the wood pellet grill.

19.     Joe manufactured and sold his new grills through TII, a company owned and operated by him and his family.  TII marketed its grills under the TRAEGER trademark.  Joe obtained United States utility patents on his inventive wood pellet grills.  For many years, TTI was the only major manufacturer of wood pellet grills in the United States.  "Traeger" soon become synonymous with wood pellet grills and grilling.

20.     From the beginning, Joe and the Traeger family were intimately involved with the identity of the TRAEGER brand.  Traeger marketing materials noted that "Customers feel like they are part of the Traeger extended family."

21.     TII touted Joe's invention of the wood pellet grill, noting "We're the originators of the wood pellet grill, the most versatile cooking appliance you can own."

(https://web.archive.org/web/20051231065712/http://www.traegerindustries.com/, a true and correct copy of which, as it appeared on December 31, 2005, is attached hereto as Exhibit 2).

22.     TII's website also recounted the history of the Traeger family and the story of Joe's invention of wood pellet grills.  (*See* https://web.archive.org/web/20051116202600/http://www.traegerindustries.com/company.htm, a true and correct copy of which, as it appeared on November 16, 2005 is attached hereto as Exhibit 3.

23.     TII first used the name TRAEGER in commerce as a trademark for barbeque grills, grill accessories, and wood pellets for grilling food on January 1, 1986.  On May 22, 2007 Traeger Grills obtained a Federal Trademark Registration

for the trademark TRAEGER as used in connection with the sale of barbeque grills, grill accessories, and wood pellets for grilling food, Registration No. 3,244,718, a true and correct copy of which is attached hereto as Exhibit 4.  The TRAEGER trademark has been in consecutive, extensive and widespread use on these goods for more than a decade following its registration and thus is incontestable.

24.     As shown in the chart attached as Exhibit 5, Traeger Grills currently owns 10 active Federal trademark registrations for various goods and services related to its sales of wood pellet grills that use the TRAEGER mark by itself or together with artwork or other related terms.

25.     TII and Traeger Grills have also used images of the TRAEGER Barn in advertising and marketing their pellet grills continuously since at least 2005, and images of the TRAEGER Barn have become synonymous with Traeger Grills.

26.     Traeger Grills' Product Catalogs use the following image of the TRAEGER Barn to promote its history as the originator of the wood pellet grill:



4832-5089-6025

27.     Traeger Grills and its distributors have displayed artwork images and photos of the TRAEGER Barn, on websites and at point-of-sale, brick-and-mortar locations where customers can purchase Traeger Grills' products and apparel, including TRAEGER Barn-themed tee shirts and hats.  Brick-and-mortar dealers who sell Traeger Grill products also display signs of the TRAEGER Barn provided by Traeger Grills, as shown below:



**B.     The Traeger Family Sells TII's Pellet Grill Business and All Associated Intellectual Property to Traeger Grills**

28.     On February 21, 2006, Traeger Grills, a limited liability company then registered and headquartered in Tampa, Florida, purchased all of TII's assets, including all associated intellectual property.  The sale transaction involved three interrelated agreements, the Asset Purchase Agreement, the Intellectual Property Rights Assignment Agreement, and separate Employment Agreements with Joe, Brian, Mark, and Randy Traeger.

1.    **The Asset Purchase Agreement**

29.    On February 21, 2006, TII, the Joe Traeger Charitable Trust, the Randy Traeger Charitable Trust, the Mark Traeger Charitable Trust, Brian Traeger, Joe Traeger, Randy Traeger, and Mark Traeger entered into an asset purchase agreement with Traeger ("Asset Purchase Agreement").  All conditions precedent to the Asset Purchase Agreement have occurred or have been performed.  A true and correct copy of the Asset Purchase Agreement is attached as Exhibit 6.

30.    Pursuant to Article 1.1 of the Asset Purchase Agreement, Traeger Grills purchased all of TII's "right, title and interest in and to the Business, including, without limitation, in and to all of the assets, properties, rights, goodwill, contracts and claims of the Business, wherever located, whether tangible or intangible, real or personal, known or unknown, actual or contingent, as the same shall exist as of the Closing," other than "Excluded Assets" not relevant here.

31.    Traeger Grills further purchased all "Intellectual Property Rights," defined to include "all items listed on Exhibit A to the [Intellectual Property Rights Assignment Agreement] . . . , trademarks, . . . , likenesses or other intellectual property held by the Sellers or any of their Affiliates and used or useful, directly or indirectly, in the Business and any other matters within the scope of business of the Company whether or not reduced to writing" (Article 8), which included "[a]ll the patents, patent rights, proprietary info and projects, trade secrets, personal goodwill and IP assets and properties used or usable in the

business," the "Traeger name and tree logo," and (2) any other marks, logos, copyrights or other intellectual property used in connection with the Business, including without limitation likenesses of people and images used in advertising.

32.    Sellers agreed to "sell, assign, convey and deliver . . . all the Sellers' interest in the Intellectual Property Rights" (Article 1.1(e)) and further represented that "all Intellectual Property Rights held by any of the Seller Parties relating to the Business are valid and subsisting and provide the Seller with the right to exclude all others from the use thereof, [except for certain licenses not relevant here]" (Article 2.19).

33.    On page 1 of the Asset Purchase Agreement, in the first Recital, TII's Business was broadly defined as "the business of design, assembly, warehousing, manufacture, marketing, sale and distribution of wood pellet grills and smokers, wood pellet BBQs, camp stoves, other cooking devices using wood pellets, and flavored and/or BBQ wood pellets and related products and accessories for the foregoing."

34.    The assets Traeger Grills purchased included, among other things: all accounts receivable (Article 1.1(a)), all inventory (Article 1.1(b)), all equipment and machinery (Article 1.1(c)), all tools (Article 1.1(d)), and all goodwill associated with the Business (Article 1.1(n)).

35.    Pursuant to Article 1.6(b) of the Asset Purchase Agreement, Traeger Grills paid the Selling Parties $3,402,122.00 as the consideration for these assets.

36.    Pursuant to Article 9.8 of the Asset Purchase Agreement, the parties agreed that "[t]his Agreement shall be governed by, and construed in accordance

with, the laws of the State of Florida, applicable to contracts executed in and to be performed entirely within that State.  The parties agree that the exclusive venue . . . for any other dispute between the parties (except those arising from a third party claim) shall be Hillsborough County, Florida."

2.    **The Intellectual Property Rights Assignment Agreement**

37.    On February 21, 2006, Joe, Brian, Randy, and Mark Traeger entered into an Intellectual Property Rights Assignment Agreement with Traeger Grills ("IP Assignment Agreement").  All conditions precedent to the IP Assignment Agreement have occurred or have been performed. A true and correct copy of the IP Assignment Agreement is attached as Exhibit 1.

38.    Pursuant to Article 1.1 of the IP Assignment Agreement, Joe, Brian, Randy, and Mark, assigned and transferred to Traeger Grills "all of their right, title and interest in and to the Intellectual Property Rights," including, but not limited to, the items listed on Exhibit A to the Assignment (the "Traeger Intellectual Property").

39.    As set forth in Exhibit A to the IP Assignment Agreement, the assigned Traeger Intellectual Property included, in part, "[a]ll the patents, patent rights, proprietary info and projects, trade secrets, personal goodwill and IP assets and properties used or usable in the business" which included, but was not limited to:  (1) the "Traeger name and tree logo (which Seller is assigning including any rights to register, in connection with the Business only)"; and (2) [a]ny other marks, logos, copyrights or other intellectual property used in connection with the Business, including without limitation likenesses of people and images used in

advertising (who shall sign documentation allowing the Buyer to continue to use the likenesses without cost and deliver said documentation to Seller at Closing)."

40.     Traeger Grills paid a total of $9,000,000 for the Traeger Intellectual Property, of which Joe received $2,842,000, Randy $2,747,000, Mark $2,747,000, and Brian $664,000. In addition, Traeger Grills agreed to pay an additional $2,000,000, conditional upon its meeting certain net sales figures for the next two years.  (Article 1.4.)

41.     Joe, Brian, Randy, and Mark agreed that the IP Assignment Agreement would be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.  (Article 9.4.)

42.     They further agreed that "in the event of any breach of this Agreement, the Buyer [Traeger Grills] would be irreparably and immediately harmed and could not be made whole by monetary damages."  (Article 9.9.)  They further agreed to "(i) waive, in any action for specific performance, the defense of adequacy of a remedy at law" and agreed that Traeger Grills "(ii) shall be entitled, in addition to any other remedy to which they may be entitled at law or in equity, to compel specific performance of this Agreement."

43.     The parties agreed that "[t]his Agreement shall be governed by, and construed in accordance with, the laws of the State of Florida, applicable to contracts executed in and to be performed entirely within that State.  The parties agree that the exclusive venue . . . for any other dispute between the parties (except those arising from a third party claim) shall be Hillsborough County, Florida." (Article 9.8.)

### C.   Traeger Grills Builds the TRAEGER Brand

44.   Following the sale, Traeger Grills invested significant resources promoting the TRAEGER mark, the TRAEGER Barn, and the goodwill associated with the creation of the wood pellet grill.  Since 2012, Traeger Grills has spent more than $100 million marketing its products nationwide through direct television (DRTV) campaigns, television advertisements, social media marketing, marketing in retail stores, and travelling "Roadshow" programs that demonstrate Traeger Grills' products in retail stores and at special events.

45.   Traeger Grills' products are sold nationwide at large chain stores such as Home Depot, Ace Hardware, Costco, Dick's Sporting Goods, Academy Sports, Orchard Supply and others, as well as specialty barbecue stores.  Traeger Grills' products are also sold online at Amazon.com, through the Traeger Grills' website, and through the websites of various Traeger Grills resellers.

46.   Since 2009 across the United States Traeger Grills has sold more than 2.2 million grills, more than 15.5 million accessories, and more than 30 million bags of pellets.  Each of these items bore the TRAEGER mark.  Last year alone, Traeger Grills sold approximately $400 million of grills and accessories in the United States.

### D.   Dansons Hires Joe and Brian to Usurp Traeger Grills' Exclusive Right to the Traeger Intellectual Property and Brand

47.   Upon information and belief, Dansons was founded in 1999. Dansons competes with Plainitiff and currently markets and sells wood pellet grills in the United States under the brand names PIT BOSS and LOUISIANA

GRILLS.  Dansons' founder and CEO is Dan Thiessen.  His sons are Dansons' President (Jeff Thiessen) and COO (Jordan Thiessen).

48.     On or about September 20, 2018, only months after Joe reached out to Traeger Grills for a job on behalf of himself and Brian, Dansons issued a marketing release announcing, among other things, that "the original founder of the pellet grill, Joe Traeger, has joined the Thiessen family at Dansons to elevate the Louisiana Grills brand and product portfolio."  A true and correct copy of the release downloaded from https://dansons.com/media-room?product_id=692 is attached as Exhibit 7.  The release further noted that "the first pellet grill was born in 1983 in the signature Traeger Barn, which still sits as a landmark in Mount Angel, Oregon." It continued:  "In this partnership, Traeger will be developing new pellet grilling products alongside Pit Boss founder and pellet grill innovator, Dan Thiessen."  This was false.

49.     Not only was the marketing release false and misleading, as Traeger Grills is not working with Dansons and is not developing new products with it, it is also a theft of Traeger Grills' intellectual property.  Traeger Grills owns the TRAEGER trademark and name, along with all personal goodwill of Joe and Brian Traeger who, therefore can only permit their names, likenesses and reputations to be used in the wood pellet grill industry in affiliation with Traeger Grills.  Traeger Grills has not authorized Dansons (or Joe or Brian) to use Joe's name or personal goodwill or the TRAEGER trademark in any manner, especially not to bolster a competitor in the wood pellet grills industry.

50.     Dansons' September 20, 2018 marketing release featured three photos, all of which included Joe Traeger.  Two of the photos included Joe, Brian, Dan Thiessen, Jeff Thiessen, and Jordan Thiessen standing together in front of the TRAEGER Barn with the TRAEGER name prominently displayed behind them. True and correct copies of these photos are reproduced below:





(Photos from Dansons' September 20, 2018 Marketing Release showing, from left to right, Jordan Thiessen, Jeff Thiessen, Dan Theissen, Joseph Traeger, and Brian Traeger; Exhibit 7 at 1, 2).

51.     The clear intent of these images, together with the misleading statements in the marketing release, was to confuse consumers by suggesting that Plaintiff, Traeger Grills, was in some way working with Dansons to develop and market pellet grills.  This decidedly is not the case.  Regardless, the use of Joe's and Brian's images in Dansons' marketing release is barred by Joe's and Brian's agreements to assign their likenesses to Traeger Grills for its exclusive use in marketing itself and its pellet grill products.

52.     On September 21, 2018, Traeger Grills' counsel sent a letter to Dansons demanding that Dansons cease and desist any and all use of, and abandon any future plans to use, the TRAEGER mark.

53.     For a period, Traeger Grills' letter appeared to have its desired effect.  But it was only the quiet before the storm.

**E.     Brian and Joe Enable Dansons to Misappropriate Traeger Grills' Name and Success**

54.     On or about March 14, 2019, nearly six months after Traeger Grills' cease-and-desist letter, Dansons issued a marketing release announcing that it would be selling a new series of wood pellet grills under the LOUISIANA GRILLS brand called the FOUNDERS SERIES.  A true and correct copy of Dansons' March 14, 2019 marketing release as it was downloaded from https://dansons.com/media-room/press-release-founders-series is attached as Exhibit 8.

4832-5089-6025

55.    The March 14, 2019 release announced: "The Founder Series is brought to you proudly by Joe Traeger, the founder of the original pellet grill, and Dan Thiessen, an accomplished innovator in the pellet grill industry." (Exhibit 8 at 1).  In the release, Dansons made clear its intention to continue using Joe in the marketing of its products, including the FOUNDERS SERIES, and other future products: "'We've just scratched the surface of this partnership and its capabilities – and neither of us is going anywhere,' said Dan Thiessen."

56.    Starting on March 16, 2019 and continuing to the present, Dansons posted on Instagram, Facebook, and Twitter a series of photos and marketing statements touting Joe and Brian Traeger's relationship with Dansons and its brands, Louisiana Grills and Pit Boss.  These posts include: posts using Joe and Brian Traeger's name and likeness, posts containing images of and references to the TRAEGER Barn, posts with references to the "founder" of the pellet grill and the "original" pellet grill, posts linking Joe and the Traeger name to the FOUNDERS SERIES, and posts linking Joe and the Traeger name to Dansons.

57.    For example, On March 17, 2019, Dansons posted to the LOUISIANA GRILLS Instagram feed a post featuring a photograph of Joe and Dan Thiessen.  In this post, Dansons confusingly identified Joe and Dan Thiessen as "the Founders" even though Joe did not found Dansons and Thiessen did not found the wood pellet grill.  A true and correct copy of a screenshot of Dansons' March 17, 2019 Instagram post, as visible on the mobile version of Instagram, is reproduced below:



58.     Additional Dansons' posts of images of Joe and/or Brian Traeger on the LOUISIANA GRILLS' Instagram feeds, Facebook pages, and Twitter feeds, and PIT BOSS' Facebook pages are reproduced on pages 1-2, 4-5, 7-9, 11-13, 15-19, 21, 23-28, 30-32, 34-36, 38-43, and 45-46, 48-52, 54-61, 63-64 of Exhibit 9 to this Complaint.

59.     On April 2, 2019, Dansons posted on the official LOUISIANA GRILLS Instagram site a photograph of Joe standing in front of the Traeger Barn with the caption: "'The barn is like home.' Joe Traeger." The image shows the Traeger name next to the Louisiana Grills brand and misleadingly states that "the founder of the wood pellet grill, Joe Traeger, is still adding to this legacy today, in the place where it all started #TheTraegerBarn . . . ." A true and correct copy of a

screenshot of Dansons' April 2, 2019 Instagram post, as visible on the mobile version of Instagram, is reproduced below:



60.     Similarly, on May 13, 2019, Dansons posted on the official LOUISIANA GRILLS Instagram site a photograph of a hand-made drawing of the original TRAEGER Barn with the TRAEGER name prominently displayed and the words "Established 1983, Mount Angel, Oregon."  Dansons further posted the following text: "'Authentic - adj. of undisputed origin, genuine.' There is no doubt that Joe Traeger is the father of pellet grills, and it all began in the Traeger Barn . . . ."  A true and correct copy of a screenshot of Dansons' May 13, 2019 Instagram post, as visible on the mobile version of Instagram, is reproduced below:



61.     Additional Dansons' posts of images of the TRAEGER Barn on

LOUISIANA GRILLS' Instagram feeds, Facebook pages, and Twitter feeds, and

PIT BOSS' Facebook pages are reproduced on pages 1, 18, 24, 42, 46, and 60 of

Exhibit 9 to this Complaint.

62.     On April 5, 2019, Dansons posted on the official LOUISIANA

GRILLS Instagram site a video showing its FOUNDERS SERIES grill and posted

the following text: "We champion a long history where tradition meets innovation.

Dating back to our relationship with the man himself, Joe Traeger, the inventor of

wood pellet grills, we continue to cherish elegant craftsmanship in the future of

this industry. We are proud to introduce the Founders Series by Louisiana Grills . .

. .'' A true and correct copy of a screenshot of Dansons' April 5, 2019 Instagram post, as visible on the mobile version of Instagram, is reproduced below:



63.     Additional Dansons' posts linking Joe Traeger to Dansons' Founders Series on LOUISIANA GRILLS' Instagram feeds, Facebook pages, and Twitter feeds, and PIT BOSS' Facebook pages are reproduced on pages 1-5, 7-10, 13-14, 16-18, 21-28, 30-33, 36-37, 40-42, 45-53, 56-58-60, and 63 of Exhibit 9 to this Complaint.

64.     On April 26, 2019, Dansons posted on the official LOUISIANA GRILLS Instagram site a photograph of Dan Thiessen with the words:

"We're not competition anymore either,
we're all one family"

—Dan Thiessen
FOUNDERS SERIES
BY LOUISIANA GRILLS

Dansons further posted the following text: "At Louisiana Grills, we value community over competition. We embrace Joe Traeger with open arms, he is one of us, one of the family. This is how we pioneer into the future, together, as one . . . ." A true and correct copy of a screenshot of Dansons' April 18, 2019 Instagram post, as visible on the mobile version of Instagram, is reproduced below:



65.    Additional Dansons' posts on LOUISIANA GRILLS' Instagram feeds, Facebook pages, and Twitter feeds, and PIT BOSS' Facebook pages linking Joe Traeger to Dansons' generally are reproduced in Exhibit 9 to this Complaint.

4832-5089-6025

66.     Brian Traeger has a personal Twitter account on which he has posted the photographs from Dansons' September 20, 2018 marketing release and re-tweeted the LOUISIANA GRILLS tweets that are included on pages 47, 49, 52, 54, 55, 56, 58, 59, 61, and 62 of Exhibit 9.

67.     Dansons has included disclaimers on some of its posts stating: "Dansons does not endorse, support or market with Traeger Grills, LLC." Dansons' disclaimer is ineffective to dispel consumer confusion regarding the relationship between Dansons and Traeger Grills.  It is entirely irrelevant whether Dansons "endorse[s], support[s] or market[s] with" Traeger Grills,  The question left open by this purported disclaimer is whether Traeger Grills "endorse[s], support[s] or market[s] with" Dansons, which it clearly does not.

68.     To make matters worse, in many instances, Dansons does not use even this inadequate disclaimer on its posts.  (*See* pages 3, 13, 17, 19, 20, 22, 23, 36, 38, 41, 43, 44, 47, 56, 59, 60, 61, 62, and 64 of Exhibit 9 showing Dansons' LOUISIANA GRILLS' Instagram feeds, Facebook pages, and Twitter feeds, and PIT BOSS' Facebook pages using Joe and/or the TRAEGER Barn with no disclaimer whatsoever).

69.     In some other instances, even where Dansons LOUISIANA GRILLS' Instagram feeds, Facebook pages, and Twitter feeds, and PIT BOSS' Facebook pages does include the purported disclaimer, it appears only as tiny text in photographs (*see* pages 4, 7, 8, 21, 24, 27, 28, 30, 31, 45, 46, 49, 50, 51, and 63 of Exhibit 9) or the consumer is required to scroll down or click on a link to "See

More" to view the disclaimer (*see* pages 11, 14, 15, 16, 18, 37, 39, 40, 42, and 57 of Exhibit 9).

70.     And even if consumers noticed Dansons' purported disclaimer, it is entirely insufficient to dispel customer confusion.  The use of Joe Traeger and the TRAEGER Barn to directly promote Dansons' products is likely to confuse (and, as set forth below, has confused) consumers into believing, incorrectly, that Traeger Grills (the company with whom the public has associated Joe Traeger and the TRAEGER Barn since the 1980s) purchased, is working with or otherwise endorses Dansons.  Dansons' disclaimer does nothing to dispel this myth and inform the public of the truth: that Traeger Grills has no relationship with Dansons, that Traeger Grills does not endorse any Dansons products, and that Dansons has no right to use Joe Traeger, Brian Traeger or any of the TRAEGER marks or other intellectual property in any of its advertisements.

## F.     Dansons' Misappropriation Has Caused Consumer Confusion

71.     Dansons' successful confusion of consumers and the failure of its disclaimers to avert such confusion are evident on Dansons' own social media feed.

72.     In the comments section for Dansons' June 4, 2019 Instagram post, @desmithmark posted a comment asking: "Are Louisiana grills the same company as Traeger."

73.     The correct answer, of course, was "No.  They are entirely different companies; and Traeger Grills in no way supports or endorses Dansons."  Instead, Dansons misleadingly responded: "While Dansons does not support, market or

endorse Traeger Grills LLC, Brian Traeger is part of our Product Development

Team and we appreciate what the Traegers have done for the Pellet Grill

Community." This was designed to create even more confusion regarding

Traeger's affiliation with Dansons and LOUSIANA GRILLS.  A true and correct

copy of a screenshot of Dansons' June 4, 2019 Instagram post showing

@desmithmark's question and Dansons' response is reproduced below:



74.     Not surprisingly, @desmithmark remained confused.  On or about

June 16, 2019, @desmithmark posted another comment on LOUISIANA

GRILLS' Instagram feed in response to Dansons' June 15, 2019 post of a video of

Joe demonstrating how to re-heat a pork chop that had been previously smoked on

a LOUISIANA GRILL.  @Desmithmark asked: "Yeah I still don't understand the

connection between Traeger and Louisiana Grills."  Dansons replied by directing

@desmithmark to Dansons' September 20, 2018 press release: "@desmithmark

Hey there, we released a press release about this here: https://louisiana-grills.com/media/traeger-founder-joins-louisiana-grills." As noted above, however, that press release was in itself false and misleading. A true and correct copy of a screenshot of Dansons' June 15, 2019 Instagram post showing @desmithmark's question and Dansons' response is reproduced below:



75.     Another member of the consuming public identified as @gfmarlin88 also expressed confusion in connection with Dansons' June 15, 2019 Instagram post: "Why is Joe Traeger now advertising for dansons/Louisiana Grills?" Again, Dansons responded simply by directing @gfmarlin88 to the misleading September 20, 2018 press release.

76.     On April 2, 2019, the LOUISIANA GRILLS Facebook account posted an image of the TRAEGER Barn and Joe Traeger. In the comments

section, a user named Vaughn Shirley asked "Is Traeger building the LG or is Joe Traeger now with LG?"  Dansons did not respond to Mr. Shirley's question. A true and correct copy of a screenshot of the April 2, 2019 LOUISIANA GRILLS Facebook account showing Vaughn Shirley's question is reproduced below:



\* \* \*



77.     On June 15, 2019, Dansons posted an image of the TRAEGER Barn on the LOUISIANA GRILLS Instagram account discussing a visit to "Joe Traeger's Barn" to listen & learn from the founder of the original pellet grill, Joe Traeger . . . ." In response to the post, an Instagram user named @barbequetoday commented "Did the founders of Traeger have a hand in Louisiana Grills? If so that would be a sweet story to hear!" Dansons did not respond to @barbequetoday's question. A true and correct copy of a screenshot of Dansons' June 15, 2019 Instagram post showing @barbequetoday's question is reproduced below:



78.     On May 18, 2019, Dansons posted on the PIT BOSS Facebook page four images of persons using PIT BOSS grills, one of whom is Joe Traeger standing in front of a sign that says, "Reserved Parking for Joe Traeger." In response to the post, a Facebook user named John Call commented "Why does one

photo have a sign for 'Joe Traeger'? As if an ad for Traeger???"  Dansons

responded by stating that "Joe Traeger joined our team last year. We are very

excited for the partnership that we have with him" and included a link to a PIT

BOSS September 20, 2018 marketing release (https://pitboss-

grills.com/media/traeger-founder-joins-pit-boss) that is similar to the

LOUISIANA GRILLS' September 20, 2018 marketing release (Exhibit 7).  A true

and correct copy of a screenshot of Dansons' May 18, 2019 Facebook post

showing John Call's question is reproduced below:



* * *



79.     Dansons' confusing use of the TRAEGER name as well as Joe's likeness, reputation and goodwill is further evidenced in press articles that perpetuate the confusion.  Thus, an article written by Jennifer Bringle entitled *Fired Up: Hot Products and Trends Debuted at HPBExpo* and published on or about April 8, 2019 at https://www.casualliving.com/web-exclusive/fired-schroeters-win-donna-h-myers-award/ states:

> Louisiana Grills teamed up with Joe Traeger—the inventor of the pellet grill— for their new Founders Series. The collaboration between Traeger and Louisiana Grills founder Dan Thiessen was designed for independent retailers and offers wood-fired flavor with the push of a button with a WiFi- and Bluetooth-enabled touch pad and mobile app controls. "The Founders Grill is for dealers—it's not for the big box side," says Traeger. "It's exciting, and we're moving fast—it's going to be a good partnership.'

80.     Understandably given Dansons' campaign of confusion, the article's use of "Traeger" leaves the misimpression that Traeger Grills and Dansons are affiliated, which is not true.

81.     Most recently, Dansons has announced its intent to hold an event at the TRAEGER Barn in September that it has billed as "The Ultimate Grilling Experience."  In the Instagram and Facebook posts announcing the event, Dansons features the TRAEGER Barn with the TRAEGER name, which caused at least one user to ask, "Why is the Traeger barn in the background?" (Exhibit 9 at 71).



G.     **Dansons Intends to Continue to Use Traeger Grills' Intellectual Property, Including Joe's Name, Likeness, Goodwill and Reputation**

82.     Dansons has made it clear that it intends to make its relationship with Joe and "Traeger" a central part of its marketing efforts.

83.     For example, in announcing the FOUNDERS SERIES grills in its March 14, 2018 marketing release, Dan Thiessen stated that "Teaming up with Joe Traeger has been a blessing. He's fired up and brings fresh ideas to the table, and we work very well together. This journey has just begun, and we are already excited about what we are bringing to market, and what we will be offering our

customers. We've just scratched the surface of this partnership and its capabilities – and neither of us is going anywhere." (Exhibit 8). Dansons has repeated these same sentiments more recently.  (Exhibit 9 at pages 8, 31, and 51).

84.     Indeed, Dansons marketing of its new FOUNDERS SERIES grills that it intends to release this Fall and its September "Ultimate Grilling Experience" are based largely on Traeger's intellectual property.  (*See*, Exhibit 9 at pages 1-14, 16-18, 21-37, 40-42, 45-56, 58-60, 63, and 71).

85.     Upon information and belief, Dansons has also assumed Joe Traeger's lease on the TRAEGER Barn from the Monastery that owns it, demonstrating that Dansons intends to continue using the TRAEGER Barn to impermissibly connect Joe and Brian and Traeger Grills to Dansons.

### First Cause of Action
### Against Joseph Traeger for Breach of the IP Assignment Agreement and the Asset Purchase Agreement

86.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 85 above.

87.     On February 21, 2006, Joseph Traeger entered into a valid and enforceable IP Assignment Agreement with Traeger Grills (Exhibit 1) and entered into a valid and enforceable Asset Purchase Agreement (Exhibit 6).

88.     Traeger Grills did all, or substantially all, of the significant things required of it under the IP Assignment Agreement and the Asset Purchase Agreement, and all conditions required for Joe's performance occurred.

89.     Pursuant to Article 1.1 of the IP Assignment Agreement, Joe agreed to assign and transfer to Traeger Grills all right, title and interest in the Intellectual

-33-

Property Rights, which includes "[a]ll the patents, patent rights, proprietary info and projects, trade secrets, personal goodwill and IP assets and properties used or usable in the business," including the Traeger name and tree logo and any other marks, logos, copyrights or other intellectual property used in the business of TII, which includes the manufacturing, sale and marketing of pellet grills.

90.     Pursuant to Article 2.6 of the IP Assignment Agreement, Joe agreed that all of the Intellectual Property Rights to be assigned to Traeger Grills are valid and subsisting and will provide Traeger Grills with the right to exclude all others from the use thereof and agreed that Joe, Brian, Randy, and Mark Traeger own all right, title and interest to the intellectual property rights sufficient to vest in Traeger Grills all right, title, and interest to the Intellectual Property Rights.

91.     Pursuant to Article 1.1(e) of the Asset Purchase Agreement, Joe agreed to assign and transfer to Traeger Grills "all of the assets, properties, rights, goodwill, contracts and claims of the Business, wherever located, whether tangible or intangible, real or personal, known or unknown, actual or contingent" and included the Intellectual Property Rights, as defined in Exhibit A to the IP Assignment Agreement.

92.     These agreements in Articles 1.1 and 2.6 of the IP Assignment Agreement and Article 1.1(e) of the Asset Purchase Agreement necessarily included the agreement that Traeger Grills would have the right, in perpetuity, to use the Intellectual Property Rights assigned to it by Joe, Brian, Randy, and Mark ("Assignors"), without any further exercise or use of the assigned rights by any of

the Assignors or any conduct by the Assignors that would interfere with Traeger Grills' lawful exercise of the assigned rights..

93.     As set forth above and shown in Exhibit 9, commencing on or about September 20, 2018, Dansons published Joe's and Brian's statements, Joe's and Brian's images, and Joe's and Brian's names—Joe Traeger, Brian Traeger, and Traeger—to consumers of pellet grills, and has since used Joe's and Brian's personal goodwill in a commercial manner in connection with the marketing, sale, and distribution of Dansons' wood pellet grills and accessories, including the FOUNDERS SERIES grills, which Dansons intends to sell starting in the Fall of 2019. The right to make such publications is a right assigned exclusively to Traeger Grills pursuant to the IP Assignment Agreement and the Asset Purchase Agreement.  Upon information and belief, Dansons' publication of Joe's and Brian's statements, their names, and their images, including Joe's and Brian's endorsement of Dansons, LOUSIANA GRILLS, and FOUNDERS SERIES grills, was done with Joe's and Brian's consent and authority, in concert with them, and with their knowledge that they do not own the right to use their names, likenesses, or personal goodwill in connection with the sales and marketing of pellet grills and that Traeger Grills is the owner of those rights, and with Joe's and Brian's intent to participate and encourage Dansons' publication.

94.     Traeger Grills did not consent to or authorize Joe, Brian, or Dansons to use Joe's and Brian's names, likenesses, or personal goodwill to promote Dansons, Dansons' products, LOUISIANA GRILLS, PIT BOSS, or the FOUNDERS SERIES grills.

95.     Joe's actions in consenting to, participating in, acting in concert with, and authorizing Dansons' publication of Joe's and Brian's statements, Joe's and Brian's images, and Joe's and Brian's names—Joe Traeger, Brian Traeger, and Traeger—to consumers of pellet grills, and to the use of Joe's and Brian's personal goodwill, in a commercial manner in connection with the marketing, sale, and distribution of Dansons' wood pellet grills and accessories constitute a material breach of Articles 1.1 and 2.6 of the IP Assignment Agreement and Article 1.1(e) of the Asset Purchase Agreement, because Joe is continuing to exercise a right that he agreed to assign to Traeger Grills and Joe is interfering with the rights he assigned exclusively to Traeger Grills in the IP Assignment Agreement.

96.     As a result of Joe's breach of the IP Assignment Agreement and the Asset Purchase Agreement, Traeger Grills has suffered and will continue to suffer damages to its business, reputation, and goodwill in an amount to be ascertained at trial.

97.     As a result of Joe's breach of the IP Assignment Agreement and the Asset Purchase Agreement, Traeger Grills has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Joe is restrained by this Court from continuing his acts of breach of the IP Assignment Agreement, these injuries to Traeger Grills will continue to occur.

## Second Cause of Action
## Against Brian Traeger for Breach of the IP Assignment Agreement and the Asset Purchase Agreement

98.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 85 above.

99.     On February 21, 2006, Brian Traeger entered into a valid and enforceable IP Assignment Agreement with Traeger Grills (Exhibit 1)  and entered into a valid and enforceable Asset Purchase Agreement (Exhibit 6).

100.    Traeger Grills did all, or substantially all, of the significant things required of it under the IP Assignment Agreement and the Asset Purchase Agreement, and all conditions required for Brian's performance occurred.

101.    Pursuant to Article 1.1 of the IP Assignment Agreement, Brian agreed to assign and transfer to Traeger Grills all right, title and interest in the Intellectual Property Rights, which includes "[a]ll the patents, patent rights, proprietary info and projects, trade secrets, personal goodwill and IP assets and properties used or usable in the business," including the Traeger name and tree logo and any other marks, logos, copyrights or other intellectual property used in the business of TII, which includes sales and marketing of pellet grills.

102.    Pursuant to Article 2.6 of the IP Assignment Agreement, Brian agreed that all of the Intellectual Property Rights to be assigned to Traeger Grills are valid and subsisting and will provide Traeger Grills with the right to exclude all others from the use thereof and agreed that Joe, Brian, Randy, and Mark Traeger own all right, title and interest to the intellectual property rights sufficient

to vest in Traeger Grills all right, title, and interest to the Intellectual Property Rights.

103.    Pursuant to Article 1.1(e) of the Asset Purchase Agreement, Brian agreed to assign and transfer to Traeger Grills "all of the assets, properties, rights, goodwill, contracts and claims of the Business, wherever located, whether tangible or intangible, real or personal, known or unknown, actual or contingent" and included the Intellectual Property Rights, as defined in Exhibit A to the IP Assignment Agreement.

104.    These agreements in Articles 1.1 and 2.6 of the IP Assignment Agreement and Article 1.1(e) of the Asset Purchase Agreement included the agreement that Traeger Grills would have the right, in perpetuity, to use all of the Intellectual Property Rights assigned to it by Joe, Brian, Randy, and Mark, without any further exercise or use of the assigned rights by any of the Assignors or any conduct by the Assignors that would interfere with Traeger Grills' lawful exercise of the assigned rights.

105.    As set forth above and in Exhibit 9, commencing on or about September 20, 2018, Dansons has published Joe's and Brian's statements, Joe's and Brian's images, and Joe's and Brian's names—Joe Traeger, Brian Traeger, and Traeger—to consumers of pellet grills, and has used Joe's and Brian's personal goodwill, in a commercial manner in connection with the marketing, sale, and distribution of Dansons' wood pellet grills and accessories, including the FOUNDERS SERIES grills, which Dansons intends to sell starting in the Fall of 2019. The right to make such publications is a right assigned exclusively to

Traeger Grills pursuant to the IP Assignment Agreement and the Asset Purchase Agreement.  Upon information and belief, Dansons' publication of Joe's and Brian's statements, their names, and their images, including Joe's and Brian's endorsement of Dansons, LOUSIANA GRILLS, and FOUNDERS SERIES grills, was done with Joe's and Brian's consent and authority, in concert with them,  and with their knowledge that they do not own the right to use their names, likeness, or personal goodwill in connection with the sales and marketing of pellet grills and that Traeger Grills is the owner of those rights.

106.   Traeger Grills did not consent to or authorize Joe, Brian, or Dansons to use Joe's and Brian's names, likenesses, or personal goodwill to promote Dansons, Dansons' products, LOUISIANA GRILLS, PIT BOSS, or the FOUNDERS SERIES grills.

107.   Brian's actions in consenting to, participating in, acting in concert with, and authorizing Dansons' publication of Joe's and Brian's statements, Joe's and Brian's images, and Joe's and Brian's names—Joe Traeger, Brian Traeger, and Traeger—to consumers of pellet grills, and use of Joe's and Brian's personal goodwill, in a commercial manner in connection with the marketing, sale, and distribution of Dansons' wood pellet grills and accessories constitute a material breach of Articles 1.1 and 2.6 of the IP Assignment Agreement and Article 1.1(e) of the Asset Purchase Agreement, because Brian is continuing to exercise a right that he agreed to assign to Traeger Grills and Joe is interfering with the rights he assigned exclusively to Traeger Grills in the IP Assignment Agreement.

108.    As a result of Brian's breach of the IP Assignment Agreement, Traeger Grills has suffered and will continue to suffer damages to its business, reputation, and goodwill in an amount to be ascertained at trial.

109.    As a result of Brian's breach of the IP Assignment Agreement, Traeger Grills has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law.  Unless Brian is restrained by this Court from continuing his acts of breach of the IP Assignment Agreement, these injuries to Traeger Grills will continue to occur.

### Third Cause of Action
### Against Brian Traeger and Mark Traeger for Contractual Indemnification

110.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 97 above.

111.    Article 7.1(a) of the IP Assignment Agreement provides that the Sellers, defined as Joe, Brian, Randy, and Mark Traeger, agree "jointly and severally to indemnify and hold harmless the Buyer [Traeger] and its Affiliates, officers, directors, employees, agents, representatives, successors and assigns, after the Closing Date from and against any Claims and Damages incurred by them arising out of or resulting from: (a) any breach on the part of any of the Sellers, or the Company or any Seller Parties (as defined in the Asset Purchase Agreement) of . . . (ii) any covenant or agreement made by any of the Sellers or the Company or any Seller Parties (as defined in the Asset Purchase Agreement) in this Agreement or in the Asset Purchase Agreement."

112.    The term "Claims and Damages" is defined in Article 8 of the IP Assignment Agreement as "any and all losses, claims, demands, liabilities, obligations, actions, suits, orders, statutory or regulatory compliance requirements, or proceedings asserted by any Person (including, without limitation, Governmental Authorities), and all damages, costs, expenses, assessments, judgments, recoveries and deficiencies, including, to the extent required pursuant to Article 8, reasonable attorneys', experts' and paralegals' fees and costs, whether prior to the filing of proceedings, during proceedings and through all appellate levels, incurred by or awarded against a party to the extent indemnified in accordance with Article 7 hereof."

113.    Pursuant to Article 7.1(a) and Article 8 of the IP Assignment Agreement, Brian and Mark Traeger are obligated to jointly and severally indemnify Traeger Grills for all damages, including Traeger Grills' reasonable attorneys', experts', and paralegals' fees and costs, that Traeger Grills incurs as a result of any breach of the IP Assignment Agreement and the Asset Purchase Agreement by Joe.

114.    As set forth above, Joe breached the IP Assignment Agreement and the Asset Purchase Agreement.  Brian and Mark thus are liable to Traeger Grills for all damages resulting from Joe's breaches, including Traeger Grills' reasonable attorneys', experts', and paralegals' fees and costs incurred in pursuing its claims against Joe.

**Fourth Cause of Action**
**Against Joseph Traeger and Mark Traeger for Contractual Indemnification**

115.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 85 and 98 through 109 above.

116.   Pursuant to Article 7.1(a) and Article 8 of the IP Assignment Agreement, Joe and Mark are obligated to jointly and severally indemnify Traeger Grills for all damages, including Traeger Grills' reasonable attorneys', experts', and paralegals' fees and costs, that Traeger Grills incurs as a result of any breach of the IP Assignment Agreement and the Asset Purchase Agreement by Brian.

117.   As set forth above, Brian breached the IP Assignment Agreement and the Asset Purchase Agreement.  Joe and Mark thus are liable to Traeger Grills for all damages resulting from Joe's breaches, including Traeger Grills' reasonable attorneys', experts', and paralegals' fees and costs incurred in pursuing its claims against Brian.

**Fifth Cause of Action**
**Against Joseph Traeger for Breach of the Covenant of Good Faith and Fair Dealing Regarding the IP Assignment Agreement and the Asset Purchase Agreement**

118.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 85 above.

119.   The IP Assignment Agreement and the Asset Purchase Agreement includes an implied promise of good faith and fair dealing that neither party will do anything to interfere with the right of any other party to receive the benefits of the contract.

-42-

120.    Joe's breach of the IP Assignment Agreement and the Asset Purchase Agreement was not an honest mistake or bad judgment but rather a conscious and deliberate act that unfairly frustrated the agreed common purpose of the IP Assignment Agreement and the Asset Purchase Agreement and disappointed the reasonable expectations of Traeger Grills, thereby depriving Traeger Grills of the benefits of the IP Assignment Agreement and the Asset Purchase Agreement.

121.    As a result of Joe's breach of the implied covenant of good faith and fair dealing regarding the IP Assignment Agreement and the Asset Purchase Agreement, Traeger Grills has suffered and will continue to suffer damages to its business, reputation, and goodwill in an amount to be ascertained at trial.

122.    As a result of Joe's breach of the implied covenant of good faith and fair dealing regarding the IP Assignment Agreement and the Asset Purchase Agreement, Traeger Grills has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Joe is restrained by this Court from continuing his  acts of breach of the IP Assignment Agreement and the Asset Purchase Agreement, these injuries will continue to occur.

**Sixth Cause of Action**
**Against Brian Traeger for Breach of the Covenant of Good Faith and Fair**
**Dealing Regarding the IP Assignment Agreement and the Asset Purchase**
**Agreement**

123.    Plaintiff repeats and realleges the allegations set forth in Paragraphs
1 through 85 above.

124.    The IP Assignment Agreement and the Asset Purchase Agreement
includes an implied promise of good faith and fair dealing that neither party will
do anything to interfere with the right of any other party to receive the benefits of
the contract.

125.    Brian's breach of the IP Assignment Agreement and the Asset
Purchase Agreement was not an honest mistake or bad judgment but rather a
conscious and deliberate act that unfairly frustrated the agreed common purpose of
the IP Assignment Agreement and the Asset Purchase Agreement and
disappointed the reasonable expectations of Traeger Grills, thereby depriving
Traeger Grills of the benefits of the IP Assignment Agreement and the Asset
Purchase Agreement.

126.    As a result of Brian's breach of the implied covenant of good faith
and fair dealing regarding the IP Assignment Agreement and the Asset Purchase
Agreement, Traeger Grills has suffered and will continue to suffer damages to its
business, reputation, and goodwill in an amount to be ascertained at trial.

127.    As a result of Brian's breach of the implied covenant of good faith
and fair dealing regarding the IP Assignment Agreement and the Asset Purchase
Agreement, Traeger Grills has suffered and will continue to suffer irreparable
injury, including actual customer confusion, the inability to control the nature and

quality of Dansons' competing goods, and loss of goodwill and harm to its

advertising efforts for which it has no adequate remedy at law. Unless Brian is

restrained by this Court from continuing his acts of breach of the IP Assignment

Agreement and the Asset Purchase Agreement, these injuries will continue to

occur.

**Seventh Cause of Action**
**Against Joseph Traeger for Violation of**
**the Right of Publicity (Fla. Stat. § 540.08)**

128.    Plaintiff repeats and realleges the allegations set forth in Paragraphs

1 through 85 above.

129.    Pursuant to Article 1.1 of the IP Assignment Agreement, Joe

assigned and transferred to Traeger Grills the use of his name, likeness, and

personal goodwill in connection with the sales and marketing of pellet grills, and

TII's rights in the TRAEGER trademark, among other things.

130.    Traeger Grills has not authorized Dansons, Joe, or Brian to use Joe's

name, likeness, or personal goodwill to promote Dansons, Dansons' products,

LOUISIANA GRILLS, PIT BOSS, or the FOUNDERS SERIES grills.

131.    Commencing on or about September 20, 2018, Dansons has

published Joe's statements, Joe's image, and Joe's name, both Joe Traeger and

Traeger, in a manner intended to directly promote, enhance, and endorse the

quality, goodwill, and reputation of Dansons and its wood pellet grill products,

including the FOUNDERS SERIES grills, which Dansons intends to sell starting

in the Fall of 2019, to consumers of pellet grills. Upon information and belief,

Dansons' publication of Joe's statements, his name, and his image was done with

Joe's consent and authority, in concert with Joe, with his knowledge that he does not own the right to use his name, likeness, or personal goodwill in connection with the sales and marketing of pellet grills and that Traeger Grills is the owner of those rights, and with his intent to participate in and encourage Dansons' publication.

132.    Joe's actions in consenting to, participating in, encouraging, acting in concert with, and authorizing Dansons' use of Joe's name, likeness, and personal goodwill and reputation to directly promote Dansons' wood pellet grills and accessories constitutes a public use of Joe's name, photograph, and likeness for commercial purposes of trade and advertising without the express written or oral consent to such use given by Traeger Grills in violation of the right of publicity pursuant to Fla. Stat. § 540.08.

133.    As a result of Joe's violation of the right of publicity under Florida Stat. § 540.08, Traeger Grills has suffered and will continue to suffer damages to its business, reputation, and goodwill in an amount to be ascertained at trial.

134.    As a result of Joe's violation of the right of publicity under Florida Stat. § 540.08, Traeger has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Joe is restrained by this Court from continuing his violation of the right of publicity, these injuries to Traeger Grills will continue to occur.

135.   Joe's actions with respect to his violations of the right of publicity pursuant to Fla. Stat. § 540.08 were done willfully, wantonly, and maliciously and in reckless disregard for Traeger Grills' rights.

**Eighth Cause of Action**
**Against Brian Traeger for Violation of**
**the Right of Publicity (Fla. Stat. § 540.08)**

136.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 85 above.

137.   Pursuant to Article 1.1 of the IP Assignment Agreement, Brian assigned and transferred to Traeger Grills the use of his name, likeness, and personal goodwill in connection with the sales and marketing of pellet grills, and TII's rights in the TRAEGER trademark, among other things.

138.   Traeger Grills has not authorized Dansons, Joe, or Brian to use Brian's name, likeness, or personal goodwill to promote Dansons, Dansons' products, LOUISIANA GRILLS, PIT BOSS, or the FOUNDERS SERIES grills.

139.   Commencing on or about September 20, 2018, Dansons has published Brian's statements, Brian's image, and Brian's name, both Brian Traeger and Traeger, in a manner intended to directly promote, enhance, and endorse the quality, goodwill, and reputation of Dansons and its wood pellet grill products, including the FOUNDERS SERIES grills, which Dansons intends to sell starting in the Fall of 2019, to consumers of pellet grills. Upon information and belief, Dansons' publication of Brian's statements, his name, and his image was done with Brian's consent and authority, in concert with Brian, and with his knowledge that he does not own the right to use his name, likeness, or personal

goodwill in connection with the sales and marketing of pellet grills and that Traeger Grills is the owner of those rights, and with his intent to participate and encourage Dansons' publication.

140.    Brian's actions in consenting to, participating in, encouraging, acting in concert with, and authorizing Dansons' use of Brian's name, likeness, and personal goodwill and reputation to directly promote Dansons' wood pellet grills and accessories constitutes a public use of Brian's name, photograph, and likeness for commercial purposes of trade and advertising without the express written or oral consent to such use given by Traeger Grills in violation of the right of publicity pursuant to Fla. Stat. § 540.08.

141.    As a result of Brian's violation of the right of publicity under Florida Stat. § 540.08, Traeger Grills has suffered and will continue to suffer damages to its business, reputation, and goodwill in an amount to be ascertained at trial.

142.    As a result of Brian's violation of the right of publicity under Florida Stat. § 540.08, Traeger Grills has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Brian is restrained by this Court from continuing his violation of the right of publicity, these injuries to Traeger will continue to occur.

143.    Brian's actions with respect to his violations of the right of publicity pursuant to Fla. Stat. § 540.08 were done willfully, wantonly, and maliciously and in reckless disregard for Traeger Grills' rights.

**Ninth Cause of Action**
**Against Joe Traeger for Contributory Infringement of TRAEGER Registered Trademark under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

144.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 85 above.

145.    Traeger Grills has exclusively used the TRAEGER trademark in the grill market since 1987.  Traeger Grills owns Trademark Registration No. 3244718 for TRAEGER as used in connection with the sale of barbeque grills, grill accessories, and wood pellets for grilling food. Traeger Grills' Trademark Registration No. 3244718 is registered on the principal register in the United States Patent and Trademark Office. The TRAEGER trademark has been in consecutive extensive and widespread use on these goods for more than a decade following its registration and therefore the TRAEGER registered trademark has become incontestable.

146.    Traeger Grills has invested significant resources in marketing and advertising to increase consumer awareness of its brand and of its trademarks in TRAEGER, including its use in the image of the TRAEGER Barn, which prominently displays the TRAEGER trademark on its wall.

147.    As a result of Traeger Grills' marketing and advertising, consumers view the TRAEGER trademark as distinctive and as identifying products manufactured and sold by Traeger.

148.    Pursuant to the IP Assignment Agreement, Traeger Grills is the exclusive owner of the right to use Joe's name, Joe Traeger and Traeger, and

Brian's name, Brian Traeger and Traeger, in connection with the marketing and sale of pellet grills.

149.    Joe has intentionally induced Dansons to infringe Traeger Grills' trademark rights in its TRAEGER trademark. Joe knowingly participated in a scheme of trademark infringement carried out by Dansons. Joe acted with the intent to participate in Dansons' infringement and acted with actual knowledge and encouragement of Dansons' infringement.  Dansons' infringing uses of Traeger Grills' TRAEGER trademark include the use of TRAEGER in images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon and the use of Joe's name, Joe Traeger and Traeger, and Brian's name, Brian Traeger and Traeger, together with their likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products, including the FOUNDERS SERIES grills.

150.    Traeger Grills has not authorized Joe to contribute to Dansons' infringing uses of TRAEGER in images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon and the use of Joe's name, Joe Traeger and Traeger, and Brian's name, Brian Traeger and Traeger, together with their likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products, including the FOUNDERS SERIES grills. Joe no longer owns the right to use, or to authorize, encourage, or consent to others' use of, the TRAEGER trademark, images of the TRAEGER Barn, or Joe's or Brian's name, likeness, goodwill, and reputation in connection

with the marketing and sale of pellet grills, because Joe sold those rights to

Traeger Grills in 2006 in the IP Assignment Agreement.

151.   Dansons' unauthorized use of the TRAEGER trademark, including

the use of TRAEGER in images of the TRAEGER Barn with the TRAEGER

trademark prominently displayed thereon and the use of Joe's name, Joe Traeger

and Traeger, and Brian's name, Brian Traeger and Traeger, together with their

likeness, goodwill, and reputation in its marketing releases and in its social media

advertising of its pellet grill products, including the FOUNDERS SERIES grills,

with Joe's knowing participation, is likely to cause confusion, mistake, or

deception in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

with respect to the TRAEGER registered trademark.

152.   Dansons' unauthorized use of the TRAEGER trademark, including

the use of TRAEGER in images of the TRAEGER Barn with the TRAEGER

trademark prominently displayed thereon and the use of Joe's name, Joe Traeger

and Traeger, and Brian's name, Brian Traeger and Traeger, together with their

likeness, goodwill, and reputation in its marketing releases and in its social media

advertising of its pellet grill products, including the FOUNDERS SERIES grills

has caused actual confusion among consumers of pellet grills.  Joe's acts have

been undertaken with full knowledge of Traeger Grills' rights in and to the

TRAEGER trademark, including Traeger Grills' rights in images of the

TRAEGER Barn with the TRAEGER trademark prominently displayed thereon

and in Joe's and Brian's name, likeness, goodwill, and reputation in connection

with the sales and marketing of pellet grills, and with the willful and deliberate

intent to cause confusion, mistake, and deception among members of the relevant public and to trade on the goodwill associated with the TRAEGER trademark.

153.    The acts of Dansons constitute infringement of Traeger Grills' registered TRAEGER trademark under Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and therefore constitute acts of contributory trademark infringement by Joe.

154.    As a result of Joe's acts of contributory trademark infringement, Traeger Grills has suffered damage to its business, reputation, and goodwill in an amount to be ascertained at trial, and Joe has made profits he would not have made but for his wrongful conduct.

155.    As a result of Joe's acts of contributory trademark infringement, Traeger Grills has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Dansons is restrained by this Court from continuing its violations, these injuries to Traeger will continue to occur.

156.    Joe's acts of contributory trademark infringement involve the use by Dansons' of a counterfeit mark, TRAEGER, pursuant to 35 U.S.C. § 1116(d) of the Lanham Act.

4832-5089-6025

**Tenth Cause of Action**
**Against Joe Traeger for Contributory False Designation of Origin under**
**Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

157.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 85 above.

158.    By virtue of the IP Assignment Agreement and Traeger Grills' continuous use of images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon and the use of Joe's name, Joe Traeger and Traeger, and Brian's name, Brian Traeger and Traeger,  together with their likeness, goodwill, and reputation in commerce in connection with its sales and marketing of pellet grills, among other things, Traeger Grills is the owner of all rights in the image of the TRAEGER Barn and all rights in Joe's and Brian's name, likeness, goodwill, and reputation as used in connection with the sale and marketing of pellet grills.

159.    Traeger Grills has invested significant resources in marketing and advertising to increase consumer awareness of its brand and of the image of the TRAEGER Barn and of Joe's and Brian's name, likeness, goodwill, and reputation in connection with the sale and marketing of pellet grills.

160.    As a result of Traeger Grills' marketing and advertising, consumers view the image of the TRAEGER Barn and view Joe's and Brian's name, likeness, goodwill, and reputation in connection with the sale and marketing of pellet grills as distinctive and as identifying products manufactured and sold by Traeger Grills.

161.    Joe has intentionally induced Dansons to infringe Traeger Grills' rights in the image of the TRAEGER Barn and Traeger Grills' rights in Joe's and

Brian's name, likeness, goodwill, and reputation. Joe knowingly participated in a scheme of false designation of origin carried out by Dansons. Joe acted with the intent to participate in Dansons' false designation of origin and acted with actual knowledge and encouragement of Dansons' false designation of origin.

162.    Dansons' infringing uses of images of the TRAEGER Barn and of Joe's name, likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products, including the FOUNDERS SERIES grills are described and shown in Exhibit 9.

163.    Traeger Grills has not authorized Joe to contribute to Dansons' infringing uses of images of the TRAEGER Barn and of Joe's name, likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products. Joe no longer owns the right to use, or to authorize, encourage, or consent to others' use of, images of the TRAEGER Barn or Joe's or Brian's name, likeness, goodwill, and reputation in connection with the marketing and sale of pellet grills, because Joe sold those rights to Traeger Grills in 2006 in the IP Assignment Agreement.

164.    Dansons' unauthorized use of images of the TRAEGER Barn and Joe's name, likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products, including the FOUNDERS SERIES grills, with Joe's knowing participation, is likely to cause confusion, mistake, or deception in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

165.    Dansons' use of images of the TRAEGER Barn and of Joe's name, likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products, including the FOUNDERS SERIES grills has caused actual confusion among consumers of pellet grills are described and shown above.

166.    Joe's acts have been undertaken with full knowledge of Traeger's rights in and to images of the TRAEGER Barn and to Joe's and Brian's name, likeness, goodwill, and reputation in connection with the marketing and sale of pellet grills, and with the willful and deliberate intent to cause confusion, mistake, and deception among members of the relevant public and to trade on the goodwill associated with the TRAEGER trademark and the TRAEGER Barn.

167.    The acts of Dansons constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and therefore constitute acts of contributory false designation of origin by Joe.

168.    As a result of Joe's acts of contributory false designation of origin, Traeger Grills has suffered damage to its business, reputation, and goodwill in an amount to be ascertained at trial, and Joe has made profits he would not have made but for his wrongful conduct.

169.    As a result of Joe's acts of contributory false designation of origin, Traeger Grills has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Dansons is restrained

by this Court from continuing its violations, these injuries to Traeger Grills will continue to occur.

**Eleventh Cause of Action**
**Against Brian Traeger for Contributory Infringement**
**of TRAEGER Registered Trademark under**
**Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

170.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 85 above.

171.   Traeger Grills has exclusively used the TRAEGER trademark in the grill market since 1987.  Traeger Grills owns Trademark Registration No. 3244718 for TRAEGER as used in connection with the sale of barbeque grills, grill accessories, and wood pellets for grilling food. Traeger's Trademark Registration No. 3244718 is registered on the principal register in the United States Patent and Trademark Office. The TRAEGER trademark has been in consecutive extensive and widespread use on these goods for more than a decade following its registration and therefore the TRAEGER registered trademark has become incontestable.

172.   Traeger Grills has invested significant resources in marketing and advertising to increase consumer awareness of its brand and of its trademarks in TRAEGER, including its use in the image of the TRAEGER Barn, which prominently displays the TRAEGER trademark on its wall.

173.   As a result of Traeger Grills' marketing and advertising consumers view the TRAEGER trademark as distinctive and as identifying products manufactured and sold by Traeger Grills.

174.     Pursuant to the IP Assignment Agreement, Traeger Grills is the exclusive owner of the right to use Joe's name, Joe Traeger and Traeger, and Brian's name, Brian Traeger and Traeger, in connection with the marketing and sale of pellet grills.

175.     Brian has intentionally induced Dansons to infringe Traeger Grills' trademark rights in its TRAEGER trademark. Brian knowingly participated in a scheme of trademark infringement carried out by Dansons. Brian acted with the intent to participate in Dansons' infringement and acted with actual knowledge and encouragement of Dansons' infringement.

176.     Dansons' infringing uses of Traeger Grills' TRAEGER trademark include the use of TRAEGER in images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon and the use of Joe's name, Joe Traeger and Traeger, and Brian's name, Brian Traeger and Traeger, together with their likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products.

177.     Traeger Grills has not authorized Brian to contribute to Dansons' infringing uses of TRAEGER in images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon and the use of Joe's name, Joe Traeger and Traeger, and Brian's name, Brian Traeger and Traeger, together with their likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products, including the FOUNDERS SERIES grills. Brian no longer owns the right to use, or to authorize, encourage, or consent to others' use of, the TRAEGER trademark, images of the TRAEGER

Barn, or Joe's or Brian's names, likeness, goodwill, and reputation in connection with the marketing and sale of pellet grills, because Brian sold those rights to Traeger Grills in 2006 in the IP Assignment Agreement.

178.    Dansons' unauthorized use of the TRAEGER trademark, including the use of TRAEGER in images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon and the use of Joe's name, Joe Traeger and Traeger, and Brian's name, Brian Traeger and Traeger, together with their likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products, including the FOUNDERS SERIES grills, with Brian's knowing participation, is likely to cause confusion, mistake, or deception in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) with respect to the TRAEGER registered trademark.

179.    Dansons' use of the TRAEGER trademark, including the use of TRAEGER in images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon and the use of Joe's name, Joe Traeger and Traeger, and Brian's name, Brian Traeger and Traeger, together with their likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products, including the FOUNDERS SERIES grills has caused actual confusion among consumers of pellet grills.

180.    Brian's acts have been undertaken with full knowledge of Traeger Grills' rights in and to the TRAEGER trademark, including Traeger Grills' rights in images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon and in Joe's and Brian's names, likeness, goodwill, and

reputation in connection with the sales and marketing of pellet grills, and with the willful and deliberate intent to cause confusion, mistake, and deception among members of the relevant public and to trade on the goodwill associated with the TRAEGER trademark.

181. The aforesaid acts of Dansons constitute infringement of Traeger's registered TRAEGER trademark under Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and therefore constitute acts of contributory trademark infringement by Brian.

182. As a result of Brian's acts of contributory trademark infringement, Traeger Grills has suffered damage to its business, reputation, and goodwill in an amount to be ascertained at trial, and Brian has made profits he would not have made but for his wrongful conduct.

183. As a result of Brian's acts of contributory trademark infringement, Traeger Grills has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Dansons is restrained by this Court from continuing its violations, these injuries to Traeger Grills will continue to occur.

184. Brian's acts of contributory trademark infringement involve the use by Dansons' of a counterfeit mark, TRAEGER, pursuant to 35 U.S.C. § 1116(d) of the Lanham Act.

## Twelfth Cause of Action
## Against Brian Traeger for Contributory False Designation of Origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

185.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 85 above.

186.    By virtue of the IP Assignment Agreement and Traeger Grills' continuous use of images of the TRAEGER Barn with the TRAEGER trademark prominently displayed thereon and the use of Joe's name, Joe Traeger and Traeger, and Brian's name, Brian Traeger and Traeger, together with their likeness, goodwill, and reputation in commerce in connection with its sales and marketing of pellet grills, among other things, Traeger is the owner of all rights in the image of the TRAEGER Barn and all rights in Joe's and Brian's name, likeness, goodwill, and reputation as used in connection with the sale and marketing of pellet grills.

187.    Traeger Grills has invested significant resources in marketing and advertising to increase consumer awareness of its brand and of the image of the TRAEGER Barn and of Joe's and Brian's name, likeness, goodwill, and reputation in connection with the sale and marketing of pellet grills.

188.    As a result of Traeger Grills' marketing and advertising, consumers view the image of the TRAEGER Barn and view Joe's and Brian's name, likeness, goodwill, and reputation in connection with the sale and marketing of pellet grills as distinctive and as identifying products manufactured and sold by Traeger.

189.    Brian has intentionally induced Dansons to infringe Traeger Grills' rights in the image of the TRAEGER Barn and Traeger Grills' rights in Joe's and

Brian's name, likeness, goodwill, and reputation. Brian knowingly participated in a scheme of false designation of origin carried out by Dansons. Brian acted with the intent to participate in Dansons' false designation of origin and acted with actual knowledge and encouragement of Dansons' false designation of origin.

190.    Dansons' infringing uses of images of the TRAEGER Barn and of Joe's and Brian's name, likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products, including the FOUNDERS SERIES grills.

191.    Traeger Grills has not authorized Brian to contribute to Dansons' infringing uses of images of the TRAEGER Barn and of Joe's and Brian's name, likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products. Brian no longer owns the right to use, or to authorize, encourage, or consent to others' use of, images of the TRAEGER Barn or Joe's or Brian's name, likeness, goodwill, and reputation in connection with the marketing and sale of pellet grills, because Brian sold those rights to Traeger Grills in 2006 in the IP Assignment Agreement.

192.    Dansons' unauthorized use of images of the TRAEGER Barn and Joe's and Brian's name, likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products, including the FOUNDERS SERIES grills, with Brian's knowing participation, is likely to cause confusion, mistake, or deception in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

193.    Dansons' use of images of the TRAEGER Barn and of Joe's and Brian's name, likeness, goodwill, and reputation in its marketing releases and in its social media advertising of its pellet grill products, including the FOUNDERS SERIES grills has caused actual confusion among consumers of pellet grills.

194.    Brian's acts have been undertaken with full knowledge of Traeger Grills' rights in and to images of the TRAEGER Barn and to Joe's and Brian's name, likeness, goodwill, and reputation in connection with the marketing and sale of pellet grills, and with the willful and deliberate intent to cause confusion, mistake, and deception among members of the relevant public and to trade on the goodwill associated with the TRAEGER trademark and the TRAEGER Barn.

195.    The aforesaid acts of Dansons constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and therefore constitute acts of contributory false designation of origin by Brian.

196.    As a result of Brian's acts of contributory false designation of origin, Traeger Grills has suffered damage to its business, reputation, and goodwill in an amount to be ascertained at trial, and Brian has made profits he would not have made but for his wrongful conduct.

197.    As a result of Brian's acts of contributory false designation of origin, Traeger Grills has suffered and will continue to suffer irreparable injury, including actual customer confusion, the inability to control the nature and quality of Dansons' competing goods, and loss of goodwill and harm to its advertising efforts for which it has no adequate remedy at law. Unless Dansons is restrained

by this Court from continuing its violations, these injuries to Traeger Grill will continue to occur.

**Thirteenth Cause of Action**
**Against Joe Traeger for Willfully Committing Acts**
**Declared Unlawful Under Florida Stats. 501.204**

198.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 85 above.

199.    Joe Traeger's acts, as alleged and described above, constitute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce that are declared unlawful under Florida Stats. 501.204.

200.    Joe's acts, as alleged and described above, were done willfully, wantonly, and maliciously and in reckless disregard for Traeger Grills' rights.

**Fourteenth Cause of Action**
**Against Brian Traeger for Willfully Committing Acts**
**Declared Unlawful Under Florida Stats. 501.204**

201.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 85 above.

202.    Brian Traeger's acts, as alleged and described above, constitute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce that are declared unlawful under Florida Stats. 501.204.

203.    Brian's acts, as alleged and described above, were done willfully, wantonly, and maliciously and in reckless disregard for Traeger Grills' rights.

4832-5089-6025

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Traeger Pellet Grills LLC, prays for judgment against each Defendant as follows:

1.      For a judicial determination and declaration that Defendant Joseph Traeger breached the IP Assignment Agreement and the Asset Purchase Agreement;

2.      For a judicial decree that orders Joe Traeger to account for and pay to Traeger Grills all damages caused to Traeger Grills by reason of his breach of the IP Assignment Agreement and the Asset Purchase Agreement;

3.      For a judicial determination and declaration that Defendant Brian Traeger breached the IP Assignment Agreement and the Asset Purchase Agreement;

4.      For a judicial decree that orders Brian Traeger to account for and pay to Traeger Grills all damages caused to Traeger Grills by reason of his breach of the IP Assignment Agreement and the Asset Purchase Agreement;

5.      For a judicial determination and declaration that Defendants Brian, Randy, and Mark Traeger are obligated to jointly and severally indemnify Traeger Grills for all damages, including its reasonable attorneys', experts', and paralegals' fees and costs, that Traeger Grills may incur, and has incurred, as a result of Joe Traeger's breach of the IP Assignment Agreement and the Asset Purchase Agreement;

6.      For a judicial decree that orders Defendants Brian, Randy, and Mark Traeger to jointly and severally account for and pay to Traeger Grills all damages,

4832-5089-6025

including its reasonable attorneys', experts', and paralegals' fees and costs, Traeger Grills has incurred and will incur as a result of Joe Traeger's breach of the IP Assignment Agreement and the Asset Purchase Agreement;

7.     For a judicial determination and declaration that Defendants Joe, Randy, and Mark Traeger are obligated to jointly and severally indemnify Traeger Grills for all damages, including its reasonable attorneys', experts', and paralegals' fees and costs, that Traeger Grills may incurr as a result of Brian Traeger's breach of the IP Assignment Agreement and the Asset Purchase Agreement;

8.     For a judicial decree that orders Defendants Joe, Randy, and Mark Traeger to jointly and severally account for and pay to Traeger Grills' all damages, including its reasonable attorneys', experts', and paralegals' fees and costs, Traeger has incurred, and will incur, as a result of Brian Traeger's breach of the IP Assignment Agreement and the Asset Purchase Agreement;

9.     For a judicial determination and declaration that Defendant Joseph Traeger breached the implied covenant of good faith and fair dealing with respect to the IP Assignment Agreement and the Asset Purchase Agreement;

10.     For a judicial decree that orders Joe Traeger to account for and pay to Traeger Grills all damages caused to Traeger Grills by reason of his breach of the implied covenant of good faith and fair dealing with respect to the IP Assignment Agreement and the Asset Purchase Agreement;

11.     For a judicial determination and declaration that Defendant Brian Traeger breached the implied covenant of good faith and fair dealing with respect to the IP Assignment Agreement and the Asset Purchase Agreement;

12.     For a judicial decree that orders Brian Traeger to account for and pay to Traeger Grills all damages caused to Traeger Grills by reason of his breach of the implied covenant of good faith and fair dealing with respect to the IP Assignment Agreement and the Asset Purchase Agreement;

13.     For a judicial determination and declaration that Defendant Joseph Traeger violated Traeger Grills' right of publicity in Joseph and Brian Traeger's names, photographs, and likenesses under Fla. Stat. § 540.08;

14.     For a judicial decree that orders Joe Traeger to account for and pay to Traeger Grills all damages caused to Traeger Grills by reason of his violations of the right to publicity under Florida Stats. § 540.08;

15.     For a judicial declaration that Joe Traeger's actions with respect to his violation of the right of publicity pursuant to Fla. Stat. § 540.08 was done willfully, wantonly, and maliciously and in reckless disregard for Traeger Grills' rights;

16.     For an award of punitive or exemplary damages against Joseph Traeger for his violation of the right of publicity pursuant to Fla. Stat. § 540.08;

17.     For a judicial determination and declaration that Defendant Brian Traeger violated Traeger Grills' right of publicity in Joseph and Brian Traeger's names, photographs, and likenesses under Fla. Stat. § 540.08;

18.     For a judicial decree that orders Brian Traeger to account for and pay to Traeger Grills all damages caused to Traeger Grills by reason of his violations of the right to publicity under Florida Stats. § 540.08;

19.     For a judicial declaration that Brian Traeger's actions with respect to his violation of the right of publicity pursuant to Fla. Stat. § 540.08 was done willfully, wantonly, and maliciously and in reckless disregard for Traeger Grills' rights;

20.     For an award of punitive or exemplary damages against Brian Traeger for his violation of the right of publicity pursuant to Fla. Stat. § 540.08;

21.     For a judicial determination and declaration that Defendant Joseph Traeger committed acts of contributory trademark infringement under 35 U.S.C. § 1114(1) with respect to Dansons' infringement of Traeger Grills' TRAEGER trademark (Registration No. 3,244,718 on the principal register of the United States Patent and Trademark Office);

22.     For a judicial decree that orders Joe Traeger to account for and pay to Traeger Grills all actual damages caused to Traeger Grills and, to the extent not included in actual damages, Joe Traeger's profits arising from the contributory trademark infringement acts alleged above under 15 U.S.C. § 1117(a), such damages and profits to be trebled under 15 U.S.C. § 1117(a);

23.     For a judicial declaration that Joe Traeger's acts of contributory trademark infringement under 35 U.S.C. § 1114(1) constitutes an exceptional case within the meaning of, and for an award of attorneys' fees, pursuant to 15 U.S.C. § 1117(a);

24.     For a judicial declaration that Joe Traeger's contributory trademark infringement involves acts of intentionally using the TRAEGER mark, knowing that such mark is a counterfeit mark under 15 U.S.C. § 1116(d), and awarding Traeger Grills judgment for three times either its actual damages and Defendants' profits under 15 U.S.C. § 1117(a), or statutory damages under 15 U.S.C. § 1117(c).

25.     For a judicial determination and declaration that Defendant Brian Traeger committed acts of contributory trademark infringement under 35 U.S.C. § 1114(1) with respect to Dansons' infringement of Traeger Grills' TRAEGER trademark (Registration No. 3,244,718 on the principal register of the United States Patent and Trademark Office);

26.     For a judicial decree that orders Brian Traeger to account for and pay to Traeger Grills all actual damages caused to Traeger Grills and, to the extent not included in actual damages, Brian Traeger's profits arising from the contributory trademark infringement acts alleged above under 15 U.S.C. § 1117(a), such damages and profits to be trebled under 15 U.S.C. § 1117(a);

27.     For a judicial declaration that Brian Traeger's acts of contributory trademark infringement under 35 U.S.C. § 1114(1) constitutes an exceptional case within the meaning of, and for an award of attorneys' fees, pursuant to 15 U.S.C. § 1117(a);

28.     For a judicial declaration that Brian Traeger's contributory trademark infringement involves acts of intentionally using the TRAEGER mark, knowing that such mark is a counterfeit mark under 15 U.S.C. § 1116(d), and

-68-

awarding Traeger Grills judgment for three times either its actual damages and Defendants' profits under 15 U.S.C. § 1117(a), or statutory damages under 15 U.S.C. § 1117(c).

29.     For a judicial determination and declaration that Defendant Joseph Traeger committed acts of contributory false designation of origin under 35 U.S.C. § 1125(a);

30.     For a judicial decree that orders Joe Traeger to account for and pay to Traeger Grills all actual damages caused to Traeger Grills and, to the extent not included in actual damages, Joe Traeger's profits arising from the contributory false designation of origin acts alleged above under 15 U.S.C. § 1125(a), such damages and profits to be trebled under 15 U.S.C. § 1117(a);

31.     For a judicial declaration that Joe Traeger's acts of contributory false designation of origin under 35 U.S.C. § 1125(a) constitutes an exceptional case within the meaning of, and for an award of attorneys' fees, pursuant to 15 U.S.C. § 1117(a);

32.     For a judicial determination and declaration that Defendant Brian Traeger committed acts of contributory false designation of origin under 35 U.S.C. § 1125(a);

33.     For a judicial decree that orders Brian Traeger to account for and pay to Traeger Grills all actual damages caused to Traeger Grills and, to the extent not included in actual damages, Brian Traeger's profits arising from the contributory false designation of origin acts alleged above under 15 U.S.C. § 1125(a), such damages and profits to be trebled under 15 U.S.C. § 1117(a);

4832-5089-6025

34.     For a judicial declaration that Brian Traeger's acts of contributory false designation of origin under 35 U.S.C. § 1125(a) constitutes an exceptional case within the meaning of, and for an award of attorneys' fees, pursuant to 15 U.S.C. § 1117(a);

35.     For a judicial order awarding to Traeger Grills costs under 15 U.S.C. § 1117(a), or as otherwise provided by law;

36.     For judicial declaration that Joe Traeger's acts, as alleged and described above, constitute unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in the conduct of any trade or commerce that are declared unlawful under Florida Stats. § 501.204.

37.     For judicial declaration that Joe Traeger's acts, as alleged and described above, were done willfully for the purposes of Florida Stats. § 501.2075.

38.     For a judicial order awarding to Traeger Grills civil penalties pursuant to Florida Stats. § 501.2075 due to Joe Traeger's violation of Florida Stats. § 501.204.

39.     For a judicial order awarding to Traeger Grills its reasonable attorneys' fees and costs pursuant to Florida Stats. § 501.2105 due to Joe Traeger's violation of Florida Stats. § 501.204.

40.     For judicial declaration that Brian Traeger's acts, as alleged and described above, constitute unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in the conduct of any trade or commerce that are declared unlawful under Florida Stats. § 501.204.

41. For judicial declaration that Brian Traeger's acts, as alleged and described above, were done willfully for the purposes of Florida Stats. § 501.2075.

42. For a judicial order awarding to Traeger Grills civil penalties pursuant to Florida Stats. § 501.2075 due to Brian Traeger's violation of Florida Stats. § 501.204.

43. For a judicial order awarding to Traeger Grills its reasonable attorneys' fees and costs pursuant to Florida Stats. § 501.2105 due to Brian Traeger's violation of Florida Stats. § 501.204.

44. For a judicial order awarding to Traeger Grills' pre-judgment and post-judgment interest in the maximum amount permitted by law;

45. For a judicial determination and decree that Joe Traeger and Brian Traeger and their respective agents, licensees, and all other persons or entities acting or attempting to act in active concert or participation with them or acting on their behalf, be preliminarily and permanently enjoined from:

    a. Using, or assisting or consenting to others in using, or publishing, in any manner, the Traeger name, images of the Traeger Barn located in Mt. Angel, Oregon, images of Joe or Brian Traeger, references to Joe as the founder or creator of the pellet grill (collectively the "Traeger Intellectual Property") in connection with the advertising, marketing, or sale of wood pellet grills and associated products.

    b. Publishing, in any manner, any statement that affiliates in any way Joseph Traeger, Brian Traeger, or Traeger with Dansons US LLC, LOUISIANA GRILLS, PIT BOSS, the FOUNDERS SERIES grills, Dan

Thiessen, Jordan Thiessen, Jeff Thiessen or Dansons' products or endorses Dansons US LLC, LOUISIANA GRILLS, PIT BOSS, the FOUNDERS SERIES grills, or any Dansons' grill-related product;

    c.    Making any public appearance anywhere in the United States, including the TRAEGER Barn, that communicates an endorsement by Joseph Traeger or Brian Traeger of Dansons US LLC, LOUISIANA GRILLS, PIT BOSS, the FOUNDERS SERIES grills, or any other Dansons' grill-related product;

    d.    Authorizing, instructing, or otherwise participating in any act by Dansons US LLC to use the trademark TRAEGER in connection with the advertising, marketing, or sales of barbeque grills, grill accessories, and wood pellets for grilling food, including any images of the TRAEGER Barn showing the prominent TRAEGER name thereon and the names Joe Traeger, Brian Traeger, and Traeger;

    e.    Authorizing, instructing, or otherwise participating in any act by Dansons US LLC to use the images of the TRAEGER Barn, the names Joe Traeger, Brian Traeger, and Traeger, or Joe Traeger's or Brian Traeger's goodwill or reputation in connection with the advertising, marketing, or sales of barbeque grills, grill accessories, and wood pellets for grilling food; and

    f.    Consenting to the use by Dansons of the TRAEGER Barn, or otherwise authorizing, instructing, or participating in, including appearing at, any event, including "The Ultimate Grilling Experience," at the

TRAEGER Barn at which Dansons or any of its products, including those marketed under the brand names PIT BOSS, LOUISIANA GRILLS, and FOUNDERS SERIES, are promoted, advertised, or marketed or any connection is made between Joe Traeger, Brian Traeger, Traeger Grills, on one hand, and Dansons, PIT BOSS, LOUISIANA GRILLS, or FOUNDERS SERIES, on the other hand.

46. For an order directing Joe Traeger and Brian Traeger to notify Dansons that Dansons has no right to use any of Traeger Grills' Intellectual Property and instruct Dansons to delete and/or remove from publication all publications containing Traeger Grills' Intellectual Property, including those publications that are identified in Exhibit 9 to this Complaint.

47. For any such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues so triable.

DATED:  July 16, 2019

By    */s/ G. Donovan Conwell, Jr.*
    G. Donovan Conwell, Jr., FBN 0371319
    (Trial Counsel)
    CONWELL BUSINESS LAW LLLP
    12610 Race Track Road
    Tampa, FL, 33626
    Tel: (813) 282-8000
    Fax: (813) 282-8800
    dconwell@conwellbusinesslaw.com
    eservice@conwellbusinesslaw.com

    Kirk Dillman (*pro hac vice pending*)
    (Trial Counsel)
    Alan P. Block (*pro hac vice pending*)
    Robert King (*pro hac vice pending*)
    MCKOOL SMITH P.C.
    300 South Grand Avenue, Suite 2900
    Los Angeles, California  90071
    Tel:  (213) 694-1200
    Fax:  (213) 694-1234
    kdillman@mckoolsmithhennigan.com
    ablock@mckoolsmithhennigan.com
    rking@mckoolsmithhennigan.com

    *Attorneys for Plaintiff TRAEGER PELLET*
    *GRILLS LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>VERIFICATION</u>

I, THOMAS BURTON, am General Counsel for Traeger Pellet Grills, LLC.  I have read the preceding VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES.  Based on my knowledge of the documents, records and information possessed by or known to me, the facts stated herein are correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16 day of July, 2019, at Salt Lake City, Utah.

Thomas Burton

-75-